Baruch C. Cohen, Esq. (SBN 159455)
LAW OFFICE OF BARUCH C. COHEN
    A Professional Law Corporation
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
Tel: (323) 937-4501   Fax: (888) 316-6107
email: baruchcohen@baruchcohenesq.com

*Attorney For Defendant Ernest Mikhail Alfon*

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>ERNEST MIKHAIL ALFON,<br><br>    Debtor. | Case No. 8:21-bk-11483-SC<br><br>Adv. 8:21-ap-01084-SC<br><br>Hon. Scott Clarkson |
| ONSITE NURSE CONCIERGE, LLC, a California limited liability company,<br><br>    Plaintiff.<br><br>vs.<br><br>ERNEST MIKHAIL ALFON, AN INDIVIDUAL,<br><br>    Defendant. | Chapter 7<br><br>**DEFENDANT'S EX PARTE MOTION CONTINUING 1-18-2023 HEARING ON PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO FIRST SET OF SPECIAL INTERROGATORIES PROPOUNDED TO DEFENDANT; DECLARATION OF BARUCH C. COHEN**<br><br>Date: TBD<br>Time: TBD<br>Place: 411 West Fourth Street, Santa Ana<br>Courtroom: 5C |

TO THE HONORABLE SCOTT CLARKSON, UNITED STATES BANKRUPTCY COURT

JUDGE, AND ALL INTERESTED PARTIES:

    **PLEASE TAKE NOTICE** that on _____ at ____ in the Courtroom of the Hon.

Scott Clarkson, United States Bankruptcy Judge, Courtroom 5C, located at the United States

Bankruptcy Court Central District of California, 411 West Fourth Street, Santa Ana, CA

92701-4593, Defendant Ernest Mikhail Alfon ("Defendant") hereby moves this Court to

continue its 1-18-2023 hearing on Plaintiff's *Motion to Compel Further Responses to First Set of*

*Special Interrogatories Propounded to Defendant*.

The *Motion* will be based on this Notice, the attached Memorandum of Points and Authorities, all the papers and records on file in this action, and on such oral and documentary evidence as may be presented at the hearing of the *Motion*.

Pursuant to Local Bankruptcy Rule 9013-1, any objection or response to this *Motion* must be stated in writing, filed with the Clerk of the Court and served on Defendant and his counsel no later than fourteen days prior to the hearing. Failure to so state, file and serve any opposition may result in the Court failing to consider the same.

DATED:        December 27, 2022        LAW OFFICE OF BARUCH C. COHEN
                                       A Professional Law Corporation

                                       By ____/S/ Baruch C. Cohen_____
                                       Baruch C. Cohen, Esq.
                                       *Attorney For Defendant Ernest Mikhail Alfon*

1     1.      **MEMORANDUM OF POINTS & AUTHORITIES**

2          On 11-16-2022, Judge Scott Clarkson issued his Scheduling Order: Discovery Cutoff:

3     January 31, 2023. (Note That This Date Includes The Date By Which All Discovery Motions

4     Must Be Heard And Resolved). Motions Cutoff: March 3, 2023. (Note That This Date Includes

5     The Date By Which All Non-Discovery Motions Must Be Heard And Resolved). Pre-Trial

6     Conference: April 18, 2023, AT 1:30 P.M. In Courtroom 5C-Virtual, Located At 411 West

7     Fourth Street, Santa Ana, CA 92701 [Doc-58]

8          On 12-23-2022, Plaintiff **unilaterally** set the hearing on the *Motion to Compel Further*

9     *Responses to First Set of Special Interrogatories Propounded to Defendant* for 1-18-2023 at

10    11:00am **without consulting with Defendant's counsel** Mr. Cohen first.

11         Plaintiff's *Joint Stipulation* that Plaintiff had Mr. Cohen sign was blank as to the date and

12    Mr. Cohen never agreed to an 1-18-2023 hearing date (on the stipulation Plaintiff wrote the

13    wrong time as 10:30am). Plaintiff's *Joint Stipulation* that was filed on 12-23-2022 [Doc-62],

14    Plaintiff improperly added that 1-18-2023 date without conferring with Mr. Cohen to see if he is

15    available.  Plaintiff's *Joint Stipulation* that was filed [Doc-62] also improperly added a sanctions

16    amount - Mr. Cohen's Joint Stipulation that he signed did not include any such sanction.[1]

17         Mr. Cohen has a trial on 1-18-2023 starting at 10:00am before Judge Scott Yun in

18    Riverside Bankruptcy Court that day *Anderson, Chapter 7 Trustee v. Silao*, 6:18-ap-01193-SY.

19    Accordingly, Mr. Cohen is unavailable to appear on 1-18-2023 before Judge Clarkson.

20         Defendant requests that the Court continue the 1-18-2023 hearing on the Motion, and

21    reluctantly, the discovery cutoff date, to accommodate Mr. Cohen's availability.

22         There is a possibility to continue the 1-18-2023 hearing to Friday 1-20-2023, but Mr.

23    Cohen's hesitation and reservation with that continued date is that the trial before Judge Yun

24    could theoretically carry over until Friday.

25         On 12-23-2022, after receiving Plaintiff's Motion, Mr. Cohen wrote to Plaintiff's counsel

26    _____

27    [1]      A true and correct copy of the Joint Stipulation that Mr. Cohen signed (with no date
              and no sanctions $ amount) is attached hereto as Exhibit "1" and is incorporated
28            herein by this reference.

1    explaining the scheduling problem and they ignored Mr. Cohen's letter.[2]

2        Accordingly, request is made to continue the 1-18-2023 hearing date on Plaintiff's

3    Motion.

4        For purposes of a continuance, Mr. Cohen is <u>not</u> available on the following dates (and

5    respectfully requests the court *not* continue the hearing on the Plaintiff's motion to said dates):

6        a.    Thursday 2-2-2023, 3:30pm (Informal Discovery Conference in LASC),

7        b.    Friday 2-10-2023, 9:00am (Motion Hearing in LASC),

8        c.    Wednesday 2-22-2023 (My daughter's Yahrtzeit),

9        d.    Thursday 2-23-2023, 2:30pm (Status Conference in USBC),

10        e.    Friday 3-10-2023, 8:30am (Motion Hearing in LASC),

11        f.    Thursday 3-23-2023, 8:30am (Motion Hearing in LASC),

12        g.    Tuesday 4-4-2023, 1:30pm (Motion Hearing in LASC),

13        h.    Thursday 4-6-2023 (1st day of Passover),

14        i.    Friday 4-7-2023 (2nd day of Passover),

15        j.    Wednesday 4-12-2023 (7th day of Passover),

16        k.    Thursday 4-13-2023 (8th day of Passover).

17

DATED:    December 27, 2022        LAW OFFICE OF BARUCH C. COHEN
18                                A Professional Law Corporation

19                                By ____/S/ Baruch C. Cohen_____
                                 Baruch C. Cohen, Esq.
20                                *Attorney For Defendant Ernest Mikhail Alfon*

21

22

23

24

25

26

27    [2]    A true and correct copy of Mr. Cohen's 12-23-2022 letter is attached hereto as
       Exhibit "2" and is incorporated herein by this reference.
28

# DECLARATION OF BARUCH C. COHEN

I, BARUCH C. COHEN, declare and state as follows:

1. The facts stated below are true and correct to the best of my personal knowledge and if called upon to testify to them, I could and would competently do so.

2. I am a member in good standing and eligible to practice before the following courts: California State Supreme Court; United States Court of Appeals - Ninth Circuit; Bankruptcy Appellate Panel; United States District Courts: Central District of California; Eastern District of California; Northern District of California; and Southern District of California.

3. I am the principal shareholder and President of The Law Office of Baruch C. Cohen, a Professional Law Corporation, located at 4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010.

4. I proudly represent Defendant Ernest Mikhail Alfon.

5. This Declaration is in support of **DEFENDANT'S EX PARTE MOTION CONTINUING 1-18-2023 HEARING ON PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO FIRST SET OF SPECIAL INTERROGATORIES PROPOUNDED TO DEFENDANT**.

6. On 12-23-2022, Plaintiff **unilaterally** set the hearing on the *Motion to Compel Further Responses to First Set of Special Interrogatories Propounded to Defendant* for 1-18-2023 at 11:00am **without consulting with me first**.

7. Plaintiff's *Joint Stipulation* that Plaintiff had me sign was blank as to the date and I never agreed to an 1-18-2023 hearing date (on the stipulation Plaintiff wrote the wrong time as 10:30am). Plaintiff's *Joint Stipulation* that was filed on 12-23-2022 [Doc-62], Plaintiff improperly added that 1-18-2023 date without conferring with me to see if I am available. Plaintiff's *Joint Stipulation* that was filed [Doc-62] also improperly added a sanctions

1    amount - The Joint Stipulation that I signed did not include any such sanction.[3]

2  8.    I have a trial on 1-18-2023 starting at 10:00am before Judge Scott Yun in Riverside

3    Bankruptcy Court that day *Anderson, Chapter 7 Trustee v. Silao*, #6:18-ap-01193-SY.

4    Accordingly, I am unavailable to appear on that date before Judge Clarkson.

5  9.    Defendant requests that the Court continue the 1-18-2023 hearing on the Motion, and

6    reluctantly, the discovery cutoff date, to accommodate my availability.

7  10.    There is a possibility to continue the 1-18-2023 hearing to Friday 1-20-2023, but my

8    hesitation and reservation with that continued date is that the trial before Judge Yun

9    could theoretically carry over until Friday.

10  11.    On 12-23-2022, after receiving Plaintiff's Motion, I wrote to Plaintiff's counsel

11    explaining the scheduling problem and they ignored my letter.[4]

12  12.    Accordingly, request is made to continue the 1-18-2023 hearing date on Plaintiff's

13    Motion.

14  13.    For purposes of a continuance, I am <u>not</u> available on the following dates (and respectfully

15    request the court *not* continue the hearing on the Plaintiff's motion to said dates):

16    a.    Thursday 2-2-2023, 3:30pm (Informal Discovery Conference in LASC),

17    b.    Friday 2-10-2023, 9:00am (Motion Hearing in LASC),

18    c.    Wednesday 2-22-2023 (My daughter's Yahrtzeit),

19    d.    Thursday 2-23-2023, 2:30pm (Status Conference in USBC),

20    e.    Friday 3-10-2023, 8:30am (Motion Hearing in LASC),

21    f.    Thursday 3-23-2023, 8:30am (Motion Hearing in LASC),

22    g.    Tuesday 4-4-2023, 1:30pm (Motion Hearing in LASC),

23    h.    Thursday 4-6-2023 (1st day of Passover),

24

25  [3]    A true and correct copy of the Joint Stipulation that I signed (with no date and no
26    sanctions $ amount) is attached hereto as Exhibit "1" and is incorporated herein by
    this reference.

27  [4]    A true and correct copy of my 12-23-2022 letter is attached hereto as Exhibit "2" and
28    is incorporated herein by this reference.

1    i.    Friday 4-7-2023 (2nd day of Passover),

2    j.    Wednesday 4-12-2023 (7th day of Passover),

3    k.    Thursday 4-13-2023 (8th day of Passover).

4

5    I declare under penalty of perjury under the laws of the State of California that the

6    foregoing is true and correct.

7    Executed December 27, 2022, at Los Angeles, California.

8    By ____/S/ Baruch C. Cohen_____
     Baruch C. Cohen

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "1"**

1   Rick Augustini (California Bar No. 160934)
    LAW OFFICE OF RICK AUGUSTINI
2   320 Seven Springs Way, Suite 250
    Nashville, TN 37027
3   Telephone:     (615) 515-0911
4   E-Mail:     rick.augustini@gmail.com
    California Office:
5   895 Dove Street, Suite 300
    Newport Beach, CA 92660
6
7   Attorneys for Plaintiff, ONSITE NURSE CONCIERGE, LLC

8   Baruch C. Cohen, Esq. (SBN 159455)
    LAW OFFICE OF BARUCH C. COHEN
9   A Professional Law Corporation
    4929 Wilshire Boulevard, Suite 940
10  Los Angeles, California 90010
11  Tel: (323) 937-4501     Fax: (888) 316-6107
    E-mail: baruchcohen@baruchcohenesq.com
12
13  Attorney for Defendant, ERNEST MIKHAIL ALFON

14              **UNITED STATES BANKRUPTCY COURT**

15              **CENTRAL DISTRICT OF CALIFORNIA**

16

17  In re                                    )   Case No.  8:21-bk-11483
                                             )
18  Ernest Mikhail Alfon,                    )   Adversary No. 8:21-ap-01084-ES
                                             )
19              Debtor.                      )   Hon. Scott C. Clarkson
                                             )
20  _____     )
                                             )   Chapter 7
21  ONSITE NURSE CONCIERGE, LLC, a           )
22  California limited liability company,    )   JOINT STIPULATION ON MOTION OF
                                             )   PLAINTIFF ONSITE NURSE CONCIERGE
23              Plaintiff,                   )   LLC TO COMPEL FURTHER RESPONSES TO
                                             )   FIRST SET OF SPECIAL INTERROGATORIES
24              v.                           )   PROPOUNDED TO DEFENDANT ERNEST
                                             )   MIKHAIL ALFON AND FOR SANCTIONS
25  ERNEST MIKHAIL ALFON, an individual,     )
                                             )   Date:     _____, 2022
26              Defendant.                   )   Time:     10:30 a.m.
                                             )   Courtroom: 5A
27                                           )
28  _____

                                             1
JOINT STIPULATION ON MOTION TO COMPEL FURTHER RESPONSES TO FIRST SET OF INTERROGATORIES

## **Plaintiff ONSITE NURSE CONCIERGE, LLC's Introduction**

Plaintiff ONSITE NURSE CONCIERGE, LLC ("Plaintiff") has been trying to get straightforward, complete, responses to its written discovery, including its First Set of Special Interrogatories, for a full year – since <u>December 2021</u>.

During this time, Plaintiff has spent countless hours meeting and conferring with Defendant ERNEST MIKHAIL ALFON's ("Defendant") counsel. Yet, despite serving "First Revised Responses," "First Revised Supplemental Responses," and "Second Revised Supplemental Responses," Defendant still refuses to (1) withdraw his lengthy prefatory statement/disclaimer that he has repeatedly agreed to withdraw; (2) withdraw objections he has repeatedly agreed to withdraw; and (3) provide full, complete and straightforward responses to Plaintiff's interrogatories.

To make matters worse, following each attempt by Plaintiff to resolve these issues, Defendant's counsel claims to be so busy with personal, health, religious and work matters that he cannot respond for weeks or, in the most recent instance, a full month.

In the interim, he has found ample time to take <u>offensive</u> actions against Plaintiff, including twice demanding that Plaintiff complete a Joint Stipulation with respect to <u>his</u> discovery, which was propounded many months later, and despite the fact that, the first time, Plaintiff had agreed to supplement its responses (which it did as agreed); and the second time, Plaintiff had already served its supplemental responses.

These same tactics resulted in an award of $25,000 in sanctions against Defendant and his counsel, Baruch Cohen, at the recent hearing on Plaintiff's Motion to Compel Further Responses to its First Request for Production of Documents.

Despite the Court's ruling on that motion and its award of sanctions, Defendant has not supplemented his responses to Plaintiff's interrogatories or made any further attempt to resolve the issues raised by this motion.

Instead, in Defendant's latest iteration of its responses served on May 10, 2022, i.e., the "Second Revised Supplemental Responses," which Defendant prefaces with a statement that they supersede all prior responses, Defendant has partially supplemented a handful of requests. Unfortunately, they remain insufficient, and the parties' meet and confer efforts have run their course.

1    Plaintiff therefore requests that the Court grant its Motion, require Defendant to provide full,

2    complete, straightforward, responses to Plaintiff's interrogatories in compliance with the Rules of Civil

3    Procedure, devoid of objections, and that Defendant and his attorneys, Baruch C. Cohen and the Law

4    Office of Baruch C. Cohen, pay monetary sanctions of $_____, all within five (5) days.

5    <u>**Defendant ERNEST MIKHAIL ALFON's Introduction**</u>

6    **Defendant's Preliminary Statement**

7    **Plaintiff's** introductory statement, that Plaintiff has been trying to get straightforward,

8    complete, responses to its First Set of Special Interrogatories, for a full year - since December

9    2021, is patently false misleading and disingenuous. Plaintiff literally dropped the ball on the

10   issue of Special Interrogatories since 5-9-2022, and did not seek further response to the Special

11   Interrogatories since we sent Plaintiff the proposed Second Revised Supplemental Response to

12   Plaintiff's Interrogatories, Set One:

13

14   **5-9-2022** - "Dear Rick: Per your request, enclosed find (PROPOSED] 1.
     DEFENDANT'S SECOND REVISED SUPPLEMENTAL RESPONSE TO

15   PLAINTIFF'S INTERROGATORIES, SET ONE... I have highlighted in yellow
     the proposed additions to be supplemented. Again, rather than supplementing

16   over and over again, I have done this final version, to complete the endless meet
     & confer process. As you said, we'll be done, your discovery dispute will be

17   resolved, and we can move on. You've seen the Response, and by asking that it
     be finalized, presumes that you'll be ok with it. The written discovery on that

18   issue has really run it's course. It's time to move on."

19   And Plaintiff's response:

20

21   **5-9-2022** - For (at least) the third time now: 1. I am not required to "pre-
     approve" your supplemental responses; 2. I am not "pre-approving" your

22   supplemental responses; and 3. Your supplemental responses (which you
     continue to call "proposed") do not resolve the deficiencies in your original

23   responses for the reasons previously stated multiple times now.  Saying
     otherwise does not make it true, and ignoring the deficiencies does not fix them.

24   Please serve your "best and final" supplemental responses in the required
     format, i.e., signed by your and your client, today. As I advised you last week,

25   Tracy and I have been going back and forth with you for several months now
     trying to get you to do what you should have done from the beginning, i.e., to

26   serve legitimate responses that comply with the rules, to no avail. We therefore
     intend to move forward with the motion and ask the Court to set a hearing date

27   ASAP."

28

1    While Plaintiff subsequently moved to compel document production in June with the hearing
     held in 8-19-2022, Plaintiff did not move to compel Special Interrogatories, indicating that
2    Defendant's 5-9-2022 response was finally sufficient to Plaintiff's liking.

3
     And now, on 12-16-2022, Plaintiff awoke from its 7+-month slumber, demanding that
4    Defendant sign the Joint Stipulation within 4-days (including Saturday which is Mr. Cohen's
     Sabbath), by 12-20-2022, which again, contains patently false misleading and disingenuous
5    statements.

6    The Motion to Compel Documents has ended with full compliance by Defendant, and with paid
     sanction by Defendant. That chapter of the case has no relevance to the issue of Special
7    Interrogatories and of trial, and Plaintiff's bringing it up in every correspondence and now in its
     purported Joint Stipulation is a transparent attempt to poison the court against Defendant. As
8    Plaintiff will soon find out, Judge Clarkson is a very intelligent jurist and not be easily fooled
     or manipulated by such tactics.
9

10   As the Court will soon learn, Plaintiff has zero evidence to support it's claims against
     Defendant. Plaintiff failed to depose Defendant and Keith Shaw (notwithstanding Defendant's
11   numerous offers to do so), and has failed to produce Dennis Lassiter to deposition. Plaintiff's
     failure to prosecute this case and comply with Defendant's discovery will not be condoned by
12   the court - even as Plaintiff's back is now pressed against the wall of trial.
13

14   Plaintiff misrepresents Defendant's counsel's prior health scare and religious observance. On
     9-28-2022, Mr. Cohen notified Plaintiff's counsel that he would be in Israel observing the
15   Jewish holiday of Siukkot with his family: " Please be advised that I will be in Israel from
     Sunday **10**-2-2022 until Tuesday 10-18-2022, in observance of the Jewish holidays of
16   Yom Kippur and Sukkot. I will have full WIFI access and can be reached via email, and
     whatsapp. Please be mindful of the 10-hour time difference, and please do not
17   schedule any hearings during this time, or matters that require oppositions during this
     time. Thank you in advance. BCC" Mr. Cohen stated his availability via wifi and
18   Plaintiff did nothing during this time. To say to the contrary and mislead the court is
     unconscionable.
19

20   Plaintiff also misleads the Court about Mr. Cohen's prior health challenges for a brief period of
     time back in May-June 2022, regarding his inability to meet and confer regarding Document
21   Demands.

22
          Plaintiff's counsel repeatedly refer to Mr. Cohen's "health issues." By placing quotation marks
23   around the term, they imply that Mr. Cohen's claims of illness are specious.  This is improper conduct
     under The Civility and Professional Guidelines of the United States District Court Central District of
24   California.

25
                    **Defendant's Response to Plaintiff's Portion of the Joint Stipulation**
26
          Plaintiff's multitudinous discovery requests are nothing but a fruitless cherry-picking foray.  For
27
     months, Plaintiff's counsel have repeatedly badgered Defendant and his attorney to respond over and over
28

1  again to the same interrogatories, not because they were incomplete, but because counsel didn't like

2  Defendant's answers. The reality is that the events at issue in this case occurred 15 years ago. The

3  Defendant was 19 years old at the time, and the last thing he cared about was a part-time job that his father

4  got him. He had no knowledge that his father using him as a pawn in a fraudulent scheme. Plaintiff's

5  counsel want to paint Mr. Alfon as a manipulative and duplicitous scammer, who conspired with his

6  father, Mr. Shaw, to defraud Onsite out of hundreds of thousands of dollars. Despite the fact that he didn't

7  even live with Mr. Shaw during this time, Plaintiff has accused Defendant of knowingly and intentionally

8  being a part of his father's plot. This is simply untrue, and Defendant's discovery responses clearly

9  demonstrate that fact. Yet Plaintiff's counsel seem to think that if they keep asking the same questions

10 over and over again, Mr. Alfon will finally give them some evidence of his nefarious scheme. The bottom

11 line is that over a period of 15 years, memories fade, witnesses and documents disappear. Unfortunately,

12 this is detrimental to both sides in proving their case. If Mr. Alfon had more information to exonerate

13 himself, he would gladly offer it up. But one cannot assume that he participated in this fraud simply

14 because he cannot remember details of conversations from a decade-and-a-half ago.

15      From December 2021 through July 11 of this year, counsel have sent each other nearly 70, **yes**

16 **seventy**, written communications regarding discovery in this case. (True and correct copies of those

17 emails and letters are attached collectively to the Declaration of Baruch Cohen as Exhibit A.) A cursory

18 reading of those emails illustrates how Plaintiff's counsel, Rick Augustini and Tracy Anielski, have

19 systematically tag-teamed Mr. Cohen with unreasonable demands. No one can say that defense counsel

20 has refused to meet and confer about any of Plaintiff's discovery in this case. But no matter how many

21 times Plaintiff's counsel complains that Defendant's responses are deficient, Defendant simply cannot

22 "create" new information or responses when he doesn't possess the requested knowledge to answer these

23 interrogatories. Over the past six months, Defendant's attorney has done his best to provide whatever

24 information his client had.

25      Defense counsel has provided several revisions to and has supplemented his client's discovery

26 responses. This is nothing unusual, and is actually required under the discovery rules when information

27 that was not available at the time of the propounding of discovery is subsequently located, or able to be

28 more thoroughly answered, explained or responded to. In fact, in May of this year, Defendant provided

1   Plaintiff with a revised 69-page supplemental response to his special interrogatory responses. This was

2   Defendant's last, best and final effort at providing complete and thorough responses to discovery. Defense

3   counsel has urged Plaintiff to take the deposition of his client if he believes information is being withheld.

4          Plaintiff's counsel takes issue with the fact that Defendant's written responses contain prefatory

5   statements asserting objections and reservations, and that despite the fact he agreed to remove them, he did

6   not. Again, there is nothing improper about a prefatory statement, and is standard operating procedure in

7   this state for nearly every case when parties respond to discovery requests. In fact, if the objections are not

8   asserted, they are presumptively waived. There is no requirement that they be removed from the written

9   responses, especially since the Defendant has provided full and complete responses to these requests. This

10  is simply a red herring. What is important is that **Defendant provided responses** to Plaintiff's

11  interrogatories.

12         Defendant has supplemented or has previously responded in full to all of Plaintiff's requests. He

13  has given substantive answers and has produced every document in his possession. Defendant simply has

14  no more information in his possession that he can provide to Plaintiff. The old adage that one cannot get

15  blood from a turnip could not be more apropos in this situation. Defense counsel has stated this to

16  Plaintiff's counsel numerous times, yet Plaintiff's counsel repeatedly press Defendant to provide more

17  written responses and produce more documents when the well has run dry. No matter how many times

18  Defendant responds, Plaintiff keeps seeking additional information. There just is nothing else that hasn't

19  already been provided to the Plaintiff. It is time for the Plaintiff to take Mr. Alfon's deposition.

20         The Civility and Professional Guidelines of the United States District Court Central District of

21  California (section B. 8.) provide that counsel "will not disparage the intelligence, morals, integrity, or

22  personal behavior of [our] adversaries before the court, either in written submissions or oral presentations."

23  They further state that counsel "will not, absent good cause, attribute bad motives or improper conduct to

24  other counsel or bring the profession into disrepute by unfounded accusations of impropriety." Yet

25  Plaintiff's counsel have both repeatedly asserted throughout Plaintiff's Motions to Compel as well as

26  Plaintiff's portion of this Joint Stipulation that defense counsel, Mr. Cohen, is basically lying about his

27  health conditions or religious requirements in order to avoid responding to discovery in a timely manner.

28  In fact, Plaintiff's counsel stated on page 2 of this Stipulation that Mr. Cohen "claims to be so busy with

1    personal, health, religious and work matters that he cannot respond for weeks or, in the most recent

2    instance, a full month." Mr. Cohen has no obligation to provide documentation of his medical issues to

3    Plaintiff's counsel simply because he believes them to be suspect. [1]  Nor should he have to somehow

4    prove that his religious beliefs preclude him from working on the Sabbath. Mr. Cohen is an officer of the

5    court, as well as an ordained rabbi. Morally and ethically, he would never misrepresent such facts to gain

6    an advantage over his adversaries.

7        This type of conduct from Plaintiff's counsel, encouraging this Court to believe that Mr. Cohen is

8    purposely lying, is egregious and offensive. "An attorney is an 'officer of the court' who, by virtue of his

9    or her professional position, undertakes certain 'special duties … to avoid conduct that undermines the

10    integrity of the adjudicative process.' " *F.T.C. v. Network Services Depot, Inc.* (9th Cir. 2010) 617 F.3d

11    1127, 1143. In other words, " '[I]t is vital to the integrity of our adversary legal process that attorneys

12    strive to maintain the highest standards of ethics, civility, and professionalism in the practice of law.'

13    *People v. Chong* (1999) 76 CalApp.4th 232, 243. Indeed, unwarranted personal attacks on the character

14    or motives of the opposing party, counsel, or witnesses are inappropriate and may constitute misconduct.

15    *Id.* at p. 245; see also *Stone v. Foster* (1980) 106 Cal.App.3d 334, 355."

16        These are situations where common decency should guide counsel on providing each other with

17    courtesy and the benefit of the doubt. In fact, Mr. Cohen greatly appreciates the fact that Plaintiff's

18    counsel has provided him with extensions in the past. However, the fact that Plaintiff's counsel may

19    believe Mr. Cohen has some spurious reasons for seeking extensions should not be addressed in pleadings

20    before the Court.

21        Plaintiff's counsel is trying to create a dispute where none exists.   Based on the above argument,

22    Defendant respectfully requests that this Court deny Plaintiff's Motion to Compel, and deny Plaintiff's

23    request for sanctions.

### Defendant's History of the Case

25        On 9-17-2021, Plaintiff commenced this *Complaint for Order Determining Debt to Be Non-*

26    *Dischargeable and Objecting to Discharge of Debtor* pursuant to 11 U.S.C. §§ 523 (a)(2), (a) (4) and

27    _____

28    [1] Should this Court require Defendant's counsel to elaborate on his medical condition, he will agree to do so in chambers out of the presence of Plaintiff's counsel.

1   (a)(6) accusing Defendant and his stepfather Keith Shaw ("Shaw") of having systematically defrauded

2   Plaintiff out of more than $100,000.00: (a) by billing it for 2,186 hours of work they never performed; and

3   (b) by falsely claiming that Defendant was a licensed nurse. § 15 alleges that in 2007, Plaintiff had sued

4   Shaw and Defendant for fraud in *Onsite Nurse Concierge v. Shaw, et al.*, Orange County Superior Court

5   Case No. 07CC10089 (the "Orange County Action"), and obtained a default judgment for $520,090.00

6   against Shaw and Defendant, including $364,791.00 in punitive damages.

7       On 10-18-2021, Defendant filed his Answer and denied the allegations, stating that a terrible

8   injustice has been perpetrated against Defendant by his step-father Shaw, who engaged in identity theft

9   and forged Defendant's identity to defraud Plaintiff by signing Defendant's name to documents without

10  Defendant's consent. Shaw's fraud continued after he was sued by Plaintiff in state court by forging

11  Defendant's signature to Shaw's state court counsel retainer agreement. Defendant was unaware of

12  Shaw's fraud until he discovered Plaintiff's enforcement of its Judgment against Defendant.

13      On 10-25-2021, Defendant's counsel wrote Plaintiff's counsel informing him that as indicated in

14  Defendant's Answer, Shaw was the real culprit here, who submitted the inflated Timesheet to Onsite; took

15  Onsite's checks made payable to an "Ernest Alfon" (not Defendant's correct name), endorsed them, and

16  deposited them. It was unclear in which bank Shaw deposited said checks (because the account numbers

17  on the back of the checks were blacked out) to determine whether they were deposited into Shaw's

18  account or not. To the extent Shaw deposited Plaintiff's checks in Defendant's bank, Shaw intercepted

19  Defendant's bank statements that came in the mail and hid them from Defendant, preventing Defendant

20  from discovering Shaw's fraud and embezzlement. Defendant advised that he was in the process of

21  analyzing Shaw's inflated Timesheets to Onsite with the forged checks.

22      Defendant has, throughout this litigation, itself ultimately pointless if not frivolous, made every

23  effort to cooperate to provide all appropriate discovery, not least so that Plaintiff could see that it has no

24  basis for trying to prevent the discharge of Defendant's debts in bankruptcy. Thus, on 11-23-2021, even

25  before formal discovery, Defendant produced the Shaw Declaration which Plaintiff had informally

26  requested that day, without requiring Plaintiff to propound formal discovery for it. In it, Shaw describes in

27  detail his actions in defrauding Plaintiff and concealing this from his stepson, the Defendant, and states

28

JOINT STIPULATION ON MOTION TO COMPEL FURTHER RESPONSES TO FIRST SET OF INTERROGATORIES

1    unequivocally and under penalty of perjury, that the Defendant had nothing to do with the scheme and no

2    knowledge of it.

3         Subsequently, Defendant has engaged in the discovery process with regard to Plaintiff's First Set

4    of Special Interrogatories in good faith and with full engagement, limited only by Defendant's counsel's

5    recent health challenges. Defendant contends that at every turn Plaintiff has enlarged and exacerbated

6    disputes by emphasizing form over substance and using formal discovery as a cudgel, even where its

7    requests have been substantively satisfied. Thus, for example, much of Plaintiff's insistence on endless

8    revision concerns objections raised by Plaintiff, even where complete responses have been provided

9    notwithstanding objection.

10         Defendant first responded to Plaintiff's Interrogatories on January 19, 2022. Notwithstanding the

11    burdensome and often silly quality of the interrogatories, Defendant provided responses in granular detail,

12    dissecting statements line by line in order to give complete responses, but nonetheless objecting as

13    appropriate to: requests that appeared to be designed to annoy, embarrass and harass; requests calling for

14    legal conclusions; requests that were overbroad, burdensome and seeking information that is neither

15    relevant to the subject matter of the action nor proportional to the needs of the case; requests calling for

16    speculation and opinion; requests that are vague and ambiguous and do not reasonably identify the

17    information sought. It must be emphasized, however, that even where making these objections in order to

18    preserve his rights, Defendant gave full and detailed responses to the Interrogatories to the best of his

19    ability.

20                              **Interrogatories in Issue:**

21    DEFENDANT'S PREFATORY STATEMENT TO ALL INTERROGATORIES:

22         This responding party and his counsel have not completed their discovery or preparation for trial

23    nor have they completed their analysis and review of the investigation and other trial preparation matters

24    and subjects obtained or conducted to date.  These responses therefore state the present information and

25    analysis of the responding party and his counsel as acquired and reviewed to date without prejudice to this

26    responding party's right to present additional facts, contentions or theories at trial based upon information,

27    evidence or analysis hereafter obtained or evaluated.  The following responses state the information, facts,

28    evidence and contentions known to and evaluated by this responding party and his counsel.

1      This responding party further hereby provides the following responses without prejudice to further

2  discovery and specifically reserves the right to present subsequently discovered evidence at trial of this

3  action.

4      Each of the following responses and answers is rendered and based upon information in the

5  possession of the responding party at the time of the preparation of these answers after diligent inquiry.

6  Discovery will continue as long as permitted by statute or stipulation of the parties and the investigation of

7  this responding party's attorneys and agents will continue to and throughout the trial of this action.  This

8  responding party therefore specifically reserves the right at the time of trial to introduce any evidence from

9  any source which may hereafter be discovered and testimony from any witnesses whose identities may

10  hereafter be discovered.

11      If any information has unintentionally been omitted from these responses, the interrogated party

12  reserves the right to apply for relief so as to permit the insertion of the omitted data from these responses.

13  This responding party has made every effort to obtain documentation necessary to respond to these

14  Discovery Requests.  These introductory comments shall apply to each and every answer given herein and

15  shall be incorporated by reference as though fully set forth in all of the responses appearing on the

16  following pages.  Finally, as some of these responses may have been ascertained by this responding

17  party's attorneys and investigators, this responding party may not have personal knowledge of the

18  information from which these responses are derived.

19      To the extent that any of these Discovery Requests call for responses which are protected by the

20  attorney/client and/or attorney work product privileges, this responding party objects to said interrogatories

21  on that basis.

22      To the extent that any of these Discovery Requests call for responses which are of a confidential

23  and proprietary nature as protected by the United States Constitution, this responding party objects to said

24  interrogatories on that basis.

25      To the extent that any of the Discovery Requests calls for responses which are protected by any

26  additional privileges, this responding party objects to the answering of said interrogatories on that basis.

27  ///

28  ///

JOINT STIPULATION ON MOTION TO COMPEL FURTHER RESPONSES TO FIRST SET OF INTERROGATORIES

1    PLAINTIFF'S CONTENTIONS RE PROPRIETY OF PREFATORY STATEMENT:

2        Repeatedly during the meet and confer process, Defendant agreed to remove the 7-paragraph

3    "prefatory statement" full of boilerplate disclaimers and objections that he purported to "incorporate by

4    reference" into all of his interrogatory responses.

5        Specifically, by letters dated March 13, 2022 and March 25, 2022, Defendant agreed to remove

6    the "prefatory statement:"

7        In the interests of resolving this discovery dispute, my client will supplement his
      response **and remove the prefatory statement/disclaimer.**
8

9        Despite this agreement, Defendant continues to include it in every iteration of his supplemental

10   responses, including his most recent, i.e., his "Second Revised Supplemental Response to Plaintiff's

11   Interrogatories, Set One" served on May 9, 2022.

12       The "prefatory statement" is improper as matter of law.

13       First, Defendant is required to respond *separately* to each interrogatory, and cannot use a prefatory

14   statement to assert blanket objections. Fed. R. Civ. P. 33(b)(3); Virginia A. Phillips and Judge Karen L.

15   Stevenson, Rutter Group Practice Guide: Federal Civil Procedure Before Trial §§ 11:1730 (April 2022

16   Update) ("The requirement that each interrogatory be responded to 'separately' makes blanket objections

17   to an entire set improper").

18       Second, grounds for objection to an interrogatory must be stated with specificity. Fed. R. Civ. P.

19   33(b)(4);, 306 F.R.D. 208, 215 (S.D. IN 2015) (holding that "general objections are entitled to little if any

20   weight"). Here, Defendant's objections require Plaintiff to "guess" what his objections are and to which

21   interrogatories they apply (e.g., "[t]o the extent that any of the Discovery Requests call for responses

22   which are protected by any additional privileges, this responding party objects . . .").

23       Plaintiff therefore is entitled to a supplemental response devoid of a "prefatory statement," per

24   Defendant's previous agreement.

25   DEFENDANT'S CONTENTIONS RE PROPRIETY OF PREFATORY STATEMENT:

26       There is absolutely no prohibition in the *Federal Rules of Civil Procedure* ("*FRCP*") against

27   prefatory statements. These "boilerplate" objections have become more and more common in response to

28   unnecessary and harassing voluminous discovery requests. The courts may find them undesirable, but it

1   has become so burdensome to repeat objections over and over in response to the unwarranted number of

2   interrogatories and production requests.  In this case, Plaintiff served 25 special interrogatories and **138**

3   requests for production.  Even with the prefatory statement, Defendant's responses to the interrogatories

4   exceeded 60 pages.  Having to repeat objections over and over to each individual response is not only

5   burdensome, but is a colossal waste of time.  Because *FRCP* Rule 33(b)(4) requires a party to make a

6   timely objection or waive that ground, as a time-saving mechanism, defense counsel incorporated a

7   prefatory statement rather than take the time to write the same objections over and over again.  But

8   whether defense counsel agreed to withdraw the statement or not is completely irrelevant, because his

9   client answered the interrogatories in great detail despite the objections.  Over the past six-plus months and

10  scores of emails and letters between counsel, it is unclear at this point what information the Plaintiff thinks

11  is missing from Defendant's responses.  Defense counsel has repeatedly offered his client for deposition.

12  Withdrawing the prefatory statement will not change the fact that Defendant has fully and completely

13  responded to Plaintiff's interrogatories.

14         Notwithstanding the above, Defendant has agreed to remove the prefatory statement, and

15  stipulates to it be deemed stricken from the Second Supplemental Responses.  Hence, there was no reason

16  for Plaintiff to continue to churn this issue for further adjudication as it was resolved.

17  SPECIAL INTERROGATORY NO. 3:

18         For each statement in the SHAW DECLARATION that YOU believe to be true, identify each

19  DOCUMENT upon which YOUR belief is based.[2]

20  SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 3:

21         Objection:  Pursuant to LBR 7026-3(b), a party must not, without leave of the court and for good

22  cause shown, serve more than 25 interrogatories on any other party.  Each subdivision of an interrogatory

23  is considered a separate interrogatory.  A motion for leave to serve additional interrogatories may be made

24

25

26  [2] The interrogatories define "YOU" and "YOUR" to mean "Responding Party;" and "DOCUMENTS" to

27  mean "information, including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data and data compilations, stored in any medium from which information can be obtained

28  either directly or, if necessary, after translation by the responding party into a reasonably usable form."

JOINT STIPULATION ON MOTION TO COMPEL FURTHER RESPONSES TO FIRST SET OF INTERROGATORIES

1  pursuant to LBR 9013-1(d) or (o). Special Interrogatory #3 requires that Defendant state facts upon which

2  he believed all 26 facts from Shaw's Declaration as reference din Special Interrogatory #1.

3        Objection: Pursuant to FRCP 33(a)(1), unless otherwise stipulated or ordered by the court, a party

4  may serve on any other party no more than 25 written interrogatories, including discrete subparts. Leave

5  to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and (2).

6  [Emphasis added].

7        The responding party has undertaken reasonable efforts to use available information in responding

8  to this request but currently lacks knowledge or information to respond at this time. Since Defendant was

9  not involved in Shaw's fraud on Plaintiff, he has no way of knowing the truth or falsehood of Shaw's

10  Declaration. Therefore, this interrogatory asks Defendant to proffer an opinion to Shaw's fraud that he has

11  no independent knowledge of, other than Shaw's confession of guilt.

12        Notwithstanding the above objections, Responding Party responds as follows:

13        1.        Paragraph 3, Line: 12 "My stepson never defrauded Onsite, I did" Paragraph 4, Lines 13-

14  14: "I alone, and not my stepson, systematically defrauded Onsite out of more than $100,000 in 2006 and

15  2007 by billing it fo9r 2,186 hours of work that I knew had not been performed."

16              a.        Shaw criminal case summary [ALFON254 – ALFON263]; and email to Sandy

17                        Lassiter [ALFON265].

18        2.        Paragraph 5, Lines 15-16: "I alone, and not my stepson, lied to Onsite about my stepson

19  being a licensed vocational nurse."

20              a.        Shaw criminal case summary [ALFON254 – ALFON263]; and email to Sandy

21                        Lassiter [ALFON265];

22        3.        Paragraph 6 lines 17 and 21 "I alone and not my stepson caused significant monetary

23  damage to onsite perpetrated by me (and not my stepson) including: $101,633.50 it paid to me and my

24  stepson; $67,547.00 Onsite refunded to the client that I (and not my stepson) victimized; and $103,394.44

25  Onsite spent to recover its property and prevent me (and not my stepson) from poaching Onsite's

26  customers."

27              a.        Shaw criminal case summary [ALFON254 – ALFON263] and email to Sandy

28                        Lassiter [ALFON265].

4.      Paragraph 8, Lines 5-8: "All representations and communications regarding my stepson's qualifications about being a licensed vocational nurse were made solely by me to Sandy Lassiter. My stepson made no communications to Sandy Lassiter of Onsite Nurse LLC regarding his qualifications."

      a.      Shaw criminal case summary [ALFON254-ALFON263] and email to Sandy Lassiter [ALFON265]; LVN Diploma Batestamped [ALFON0242].

5.      Paragraph 9, lines 9-13: "I was solely responsible for submitting and verifying the time sheets of the hours worked and delivering them to Sandy Lassiter/Onsite Nurse LLC for billing. I was also solely responsible for delivering checks to the staff that I had contracted, and this was accomplished by Onsite Nurse Concierge and Sandy Lassiter producing the checks, and I would then pick them up from her home and deliver them to the contracted staff.

      a.      Shaw criminal case summary [ALFON254-ALFON263[; and email to Sandy Lassiter [ALFON265].

6.      Paragraph 11, Lines 18-24: "At the time of his brief employment with Onsite, my stepson was living at 20 Globe, Ladera Ranch, CA 92694 with a girlfriend. However, much of his personal belongings were still at my residence at 26731 Sierra Vista, Mission Viejo, CA 92692, since he lived there many years before, including clothes, my high school diplomas, passports, social security card and other personal belongings. He was 18 or 19 years old at this time and in addition to his belongings being left at my residence, he also had not forwarded any of his mail to his new address at Ladera Ranch."

      a.      E. Alfon People Finder Search Bate Stamped [ALFON 0233]. E. Alfon Credit report [ALFON 0252].

7.      Paragraph 12, Lines 25-27: "Some of my stepson's mail including his cell phone bills, credit card statements, and bank statements were still being sent to my residence in Mission Viejo. I improperly opened up all of my stepson's mail and was privy to all of his personal information.

      a.      E. Alfon People Finder Search Bate Stamped [ALFON 0233], E. Alfon Credit report [ALFON 0252].

8.      Paragraph 13, Lines 28-1: "I improperly opened my stepson's mail, used his information and identity to defraud Onsite Nurse Concierge LLC."

1        a.     E. Alfon People Finder Search Bate Stamped [ALFON 0233], E. Alfon Credit

2        report [ALFON 0252].

3     9.    Paragraph 14, Lines 3-5: "I was able to do this by manipulating false timecards in the

4  name of my stepson, and by submitting these false timesheets to Onsite Nurse purportedly

5  in his name. I never told my stepson of my fraudulent submission of false timesheets to

6  Onsite Nurse in his name."

7        a.     Shaw criminal case summary [ALFON254 -ALFON263]; and email to Sandy

8        Lassiter [ALFON265].

9    10. Paragraph 15, Lines 6-8: "I do not know the totality of my false timesheets, because my

10  stepson did do some work for Onsite, but it is my understanding that the vast majority of the timesheets

11  that I submitted to Onsite in my stepson's name were fraudulently submitted by me."

12        a.     Shaw criminal case summary [ALFON254-ALFON263]; and email to Sandy

13        Lassiter [ALFON265].

14    11. Paragraph 16, Lines 9-11: "I also falsely instructed Onsite to make the checks payable to

15  my stepson to "Ernest Alfon" (while technically part of his name, but not the name he goes by - he goes by

16  the name "Mikhail Alfon") and have the checks sent to the Mission Viejo address."

17        a.     Shaw criminal case summary [ALFON254-ALFON263]; and email to Sandy

18        Lassiter [ALFON265].

19    12. Paragraph 17, Lines 14-25: "Once Onsite's checks to "Ernest Alfon" were mailed to my

20  Mission Viejo address, I intercepted them and improperly opened up those envelopes from Onsite,

21  retrieved the checks from Onsite payable to "Ernest Alfon" and cashed them in my stepson's bank using

22  my stepson's personal information that I was wrongfully in possession of. I was able to use my stepson's

23  banking and personal information from the statements that were coming to my residence, deposit Onsite's

24  checks by forging his signature as endorsements on multiple occasions, and then make withdrawals from

25  my stepson's account without any of his knowledge. I kept my stepson's bank statements and hid them

26  from my stepson so that he should not find out about it. I never told my stepson of the above and he was

27  not aware that I used his personal information to defraud Onsite Nurse Concierge. I continued this

28  fraudulent scheme and defrauded Onsite ( and my stepson) of approximately $33,696.00 in checks."

JOINT STIPULATION ON MOTION TO COMPEL FURTHER RESPONSES TO FIRST SET OF INTERROGATORIES

1          a.      Shaw criminal case summary [ALFON254 -ALFON263]; and email to Sandy

2               Lassiter [ALFON265].

3       13. Paragraph 18, Lines 26-28: "My stepson and I were not living together while I perpetrated

4  the fraudulent scheme against Onsite."

5          a.      E. Alfon People Finder Search [ALFON0233], Declaration of Michael Singer

6               [ALFON240-0241], Declaration of Megan Singer [ALFON0240-0241],

7               Declaration of Aureen Ruth De Venecia Crabtree (ALFON0240], Credit Report

8               [ALFON 0246-0251). Proof of Residence [ALFON0220], Proof of Residence

9               [ALFON000316].

10      14.    Paragraph 19, Lines 5-17: "I never told my stepson about the lawsuit and concealed that

11  fact from him as well, to cover up my embarrassment for the fraud I perpetrated against Onsite and against

12  him. I retained attorney Christopher J. Skorina to represent both of us, and forged my stepson's signature

13  on Skorina's retainer agreement. I misrepresented to Skorina that all communications between us were

14  also on behalf of my stepson – who knew nothing of the lawsuit. My stepson was never served with the

15  summons and complaint (because he was not living at my Mission Viejo address). I (not my stepson)

16  did not participate in the case management statement; I (not my stepson) did not appear at the case

17  management conference; I (not my stepson) failed to appear at hearings; I (not my stepson) failed to pay

18  sanctions the Court ordered against us; I (not my stepson) failed and refused to respond to discovery; and I

19  (not my stepson) did not participate in law and motion - because I concealed all this from him and he was

20  unaware of it. Again, I lied to Skorina that his representation was on behalf of my stepson."

21          a.      E. Alfon People Finder Search [ALFON0233], Declaration of Michael Singer

22               [ALFON240-0241], Declaration of Megan Singer [ALFON0240-0241],

23               Declaration of Aureen Ruth De Venecia Crabtree [ALFON0240], Credit Report

24               [ ALFON 0246-0251). Proof of Residence [ALFON0220], Proof of Residence

25               [ALFON000316].

26      15.    Paragraph 20, Lines 18-20: "By early-2009, with trial approaching, the Court in the

27  Orange County Action struck our (mine and not my stepson's) answer and our (mine and not my stepson's)

28  cross-complaint, and defaulted us."

JOINT STIPULATION ON MOTION TO COMPEL FURTHER RESPONSES TO FIRST SET OF INTERROGATORIES

1              a.      Responding Party does not documents responsive to this Document Demand in

2                      his possession custody and control, and cannot produce them.

3        16. Paragraph 21, lines 21-23: "Several months later, on September 30, 2009, Onsite proved

4   up its damages and obtained a default judgment for $520,090.00 against us including $364,791.00 in

5   punitive damages. I concealed this Judgment from my stepson."

6              a.      E. Alfon People Finder Search [ALFON0233], Declaration of Michael Singer

7                      [ALFON240-0241], Declaration of Megan Singer [ALFON0240-0241],

8                      Declaration of Aureen Ruth De Venecia Crabtree [ALFON0240], Credit Report

9                      [ALFON 0246-0251].

10       17. Paragraph 23, Lines 26-27: "I also concealed from my stepson Onsite's renewed

11  Judgment of April 3, 2019 in the amount of $1,016,449.48."

12             a.      Current Lease[ALFON0266-0309]

13       18. Paragraph 24, Lines 28-1 : "I also concealed from my stepson Onsite's Abstract of

14  Judgment that it mailed to me at my Mission Viejo address on January 7, 2010."

15             a.      E. Alfon People Finder Search [ALFON0233], Declaration of Michael Singer

16                     [ALFON240-0241], Declaration of Megan Singer [ALFON0240-0241],

17                     Declaration of Aureen Ruth De Venecia Crabtree [ALFON0240], Credit Report

18                     [ALFON 0246-0251]. Proof of Residence [ALFON0220], Proof of Residence

19                     [ALFON000316].

20       19. Paragraph 25, Line 2: "My stepson and I were not living together during the Orange

21  County Action. "

22             a.      E. Alfon People Finder Search [ALFON0233], Declaration of Michael Singer

23                     [ALFON240-0241], Declaration of Megan Singer [ALFON0240-0241],

24                     Declaration of Aureen Ruth De Venecia Crabtree [ALFON0240], Credit Report

25                     [ALFON 0246-0251]. Proof of Residence [ALFON0220], Proof of Residence

26                     [ALFON000316].

27       20. Paragraph 27, Lines 12-15: "As a result, in June 2008, Skorina withdrew, falsely thinking

28

1    that he withdrew from representing my stepson - when he never did. I failed and refused to "comply" with

2    Skorina's fee agreement, i.e., my failure to pay (not my stepson) and I failed and refused to sign a

3    substitution of attorney form (not my stepson)."

4                    a.        Responding Party does not documents responsive to this Document Demand in

5                              his possession custody and control, and cannot produce them.

6            21. Paragraph 28, Lines 16-17: "On August 7, 2008, the Court granted Skorina's motion to be

7    relieved as counsel, which Skorina mailed to my Mission Viejo address, and which I concealed from my

8    stepson."

9                    a.        E. Alfon People Finder Search [ALFON0233), Declaration of Michael Singer

10                             [ALFON240-0241], Declaration of Megan Singer [ALFON0240-0241],

11                             Declaration of Aureen Ruth De Venecia Crabtree [ALFON0240], Credit Report

12                             [ALFON 0246-0251].

13           22. Paragraph 29, Lines 18-19: "I never filed a filed a Notice of Change of Address for my

14   stepson with his Ladera Ranch address because I wanted to conceal the Orange County Action from my

15   stepson."

16                   a.        E. Alfon People Finder Search [ALFON0233], Declaration of Michael Singer

17                             [ALFON240-0241], Declaration of Megan Singer [ALFON0240-0241],

18                             Declaration of Aureen Ruth De Venecia Crabtree [ALFON0240], Credit Report

19                             (ALFON 0246-0251]. Proof of Residence (ALFON0220], Proof of Residence

20                             (ALFON000316].

21           23. Paragraph 33, Lines 27-28: "I was preoccupied with my criminal case and the impending

22   time I had to serve in prison and failed to inform my stepson of the Orange County Action against us."

23                   a.        Responding Party docs not documents responsive to this Document Demand in

24                             his possession custody and control, and cannot produce them.

25           24. Paragraph 34, Lines 1-2: "I had served 3 years of my 7 year sentence and when I was

26   released from prison I continued to conceal my fraudulent scheme against Onsite Nurse and from my

27   stepson."

28                   a.        Responding Party does not documents responsive to this Document Demand in

1    his possession custody and control, and cannot produce them.

2    25. Paragraph 35, Lines 5-9: "It was only until January of 2021 when my stepson's wife

3    Alexa Benavides received a third-party debtor examination order and a subpoena requiring her to produce

4    documents from Onsite did my stepson finally discover the Orange County Action. It is my understanding

5    that the night before the examination, which was set for June 11, 2021, my stepson filed his Chapter 7

6    bankruptcy petition."

7            a.        Responding Party does not documents responsive to this Document Demand in

8                    his possession custody and control, and cannot produce them.

9    26. Paragraph 3 7, Lines 17-18: "He was completely ignorant of my frauds and is completely

10    innocent of the charges made against him."

11            a.        Responding Party does not documents responsive to this Document Demand in

12                    his possession custody and control, and cannot produce them.

13    SECOND REVISED SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 3:

14            Regarding Plaintiff's claims that Defendant's credit report and people finder report do not reflect

15    that he failed to forward his mail or that he left his personal belongings at Shaw's address in response to

16    Request Nos. 3.

17            Plaintiff did not request any mail forwarding documents from Defendant, and Defendant was not

18    obligated to produce it, assuming I retained it.  Shaw and I testified that I left my personal belongings at

19    Shaw's address.  My credit report and people finder report are all the documents that I have in response to

20    that discovery request.

21            Plaintiff is asking me to assert facts, identify documents, or produce documents to support a

22    negative.  I have already produced Shaw's declaration taking full responsibility for his fraud on Onsite.

23            My mother will testify that I did not live at 21622 during the relevant time frames.  [See

24    DECLARATION OF CATHERINE ALFON SHAW BATESTAMPED #ALFON000317-320].

25    PLAINTIFF'S CONTENTIONS RE NECESSITY OF FURTHER RESPONSE TO SPECIAL
       INTERROGATORY NO. 3:

26

27            Defendant has failed to provide a response in compliance with Fed. R. Civ. P. 33.

28

1    First, Defendant confirmed in several letters that he would withdraw his objections based on Local

2 Bankruptcy Rule 7026-3(b).  *See* Declaration of Rick Augustini, Exh. 16:  "In the interests of resolving

3 this discovery dispute, my client will supplement his response and remove the LBR 7026-3(b)

4 Objections."

5    Second, Defendant has responded to this interrogatory as if it is a document request.  The

6 interrogatory asks him to <u>identify</u> documents that support his contention that the statements in Declaration

7 of Keith Shaw (the "SHAW DECLARATION") are true.

8    Instead, with respect to several paragraphs of the Declaration, Defendant states that, "Responding

9 Party does not documents [sic] responsive to this Document Demand in his possession custody and

10 control, and cannot produce them."  This is not a proper response to an <u>interrogatory</u>.

11    Regardless of whether Defendant has responsive documents in his possession, custody or control,

12 he is required to <u>identify</u> any documents he is aware of that support his contention.

13    Third, where Defendant has identified documents, he has only listed those he has already

14 produced.  It therefore appears that his response is incomplete, since it fails to identify <u>other</u> documents,

15 i.e., those <u>not</u> in Defendant's possession, custody or control that nevertheless support his contention that

16 the statements in the Shaw Declaration are true.

17    These issues have been raised in meet and confer letters and discussions with Defendant's

18 counsel, but have been ignored.

19 <u>DEFENDANT'S CONTENTIONS RE SUFFICIENCY OF RESPONSE TO SPECIAL</u>
 <u>INTERROGATORY NO. 3</u>:

20

21    As reflected above in Defendant's Supplemental Response to Plaintiff's Special Interrogatory No.

 3, he provided a lengthy response and detailed information to the interrogatory.  The matter of whether

22

 Defendant should withdraw his objections is moot since he has answered the interrogatory, however,

23

 should this Court order Defendant to do so, he will withdraw only the objections that do not apply.  It

24

 appears as though the issue is now with Defendant's Second Supplemental Response -- that Defendant

25

 produced documents in response to an interrogatory, rather than identifying them.  This is nitpicking at its

26

 most egregious – Defendant stated that the only documents he had in response to Interrogatory No. 3 were

27

 his credit report and a "people finder" report.  He **identified** these documents.  But this response is not

28

1    enough for Plaintiff's counsel, as they are now asking Defendant to identify other documents of which he

2    is unaware.  He has identified and produced all documents in response to the interrogatory.  Additionally,

3    he has offered to produce his mother for a deposition on the issue.  Apparently, this response is not

4    sufficient for Plaintiff's counsel, as they are asking him to "identify other documents, i.e., those not in

5    Defendant's possession, custody or control that nevertheless support his contention that the statements in

6    the Shaw Declaration are true." **There are no other documents**, and the Defendant and his attorney have

7    repeatedly stated this to counsel, in written responses and in their multiple meet-and-confer emails.

8    Accordingly, this response is sufficient.  However, should the Court decide that Defendant needs to amend

9    it, he will do so by asserting the proper objections and answering, again, that he is unable to identify any

10    other documents that are responsive to this interrogatory.

11    Plaintiff fails to state in what manner Defendant's response is allegedly not in compliance with

12    *FRCP* 33.

13    Notwithstanding the above, Defendant stipulates that he has withdrawn his objections pursuant to

14    *LBR* 7026-3(b).

15    The remainder of Plaintiff's contentions are of the "form-over-substance" variety, essentially

16    creating a dispute where Defendant has substantively responded in full. Since Defendant was not involved

17    in Shaw's fraud on Plaintiff, he has no way of knowing the truth or falsehood of Shaw's Declaration.

18    Therefore, this interrogatory is impossible to fully answer, as it asks Defendant to proffer an opinion to

19    Shaw's fraud that he has no independent knowledge of, other than Shaw's confession of guilt.

20    Moreover, Defendant can only base his belief in the truth of a statement on a document with

21    which he is familiar, and the only documents with which Defendant is familiar regarding such long-ago

22    events are those in his possession. Thus, Defendant's response that he has no such documents is

23    responsive to the interrogatory, and is as complete a response as he is capable of giving. This is

24    Defendant's response, and Plaintiff is of course free to examine Defendant at deposition or trial regarding

25    this response, but there is no basis on which to reject it.

26    Nonetheless, for the sake of clarity, the sentence, "Responding Party does not documents [sic]

27    responsive to this Document Demand in his possession custody and control, and cannot produce them,"

28

JOINT STIPULATION ON MOTION TO COMPEL FURTHER RESPONSES TO FIRST SET OF INTERROGATORIES

1  should be amended to read, "Responding Party is not familiar with any [further] documents upon which

2  his belief in the truth of this statement may be based."

3  SPECIAL INTERROGATORY NO. 11:

4       Describe each communication between YOU and anyone affiliated with ONSITE regarding any

5  aspect of YOUR work for it, including the date, mode (e.g., oral or written) and substance of the

6  communication.[3]

7  SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 11:

8       Objection: Pursuant to LBR 7026-3(b), A party must not, without leave of the court and for good

9  cause shown, serve more than 25 interrogatories on any other party. Each subdivision of an interrogatory

10  is considered a separate interrogatory. A motion for leave to serve additional interrogatories may be made

11  pursuant to LBR 9013-1 (d) or (o). This special interrogatory exceeds the 25 interrogatory limit of LBR

12  7026-3(b).

13       Objection: Pursuant to FRCP 33a(1), unless otherwise stipulated or ordered by the court, a party

14  may serve on any other party no more than 25 written interrogatories, *including all discrete subparts.*

15  Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and

16  (2). [Emphasis added]. This special interrogatory exceeds the 25 interrogatory limit of FRCP 33a(l).

17       Notwithstanding the above objections, Responding Party responds as follows: (1) Raymond

18  Babylonia - was also employed by Onsite as a caregiver and shared a shift taking care of the same client as

19  Defendant. Considering these conversations are over 15 years old, Defendant does not recall the exact

20  substance or dates of the conversations, but it would be regarding their duties as caregivers for Onsite; (2)

21  Keith Shaw. These conversations arc over 15 years old, and Defendant does not recall the exact substance

22  or dates of the conversations but it would be regarding Defendant's duties as caregivers for Onsite; (3)

23  Sandy Lassiter.  These conversations are over 15 years old, and Defendant does not recall the exact

24  substance or dates of the conversations but it would be regarding Defendant's duties as caregivers of

25  Onsite.

26

27

28

[3] The term "ONSITE" was defined in the Interrogatories to mean "Onsite Nurse Concierge, LLC and anyone acting on its behalf, including without limitation Sandy Lassiter."

1    SECOND REVISED SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 11:

2         Regarding Defendant's conversations with Onsite personnel.

3         I cannot recall the exact date, time, or mode of communication regarding my work for Onsite, as

4    they had taken place almost 15 years ago at this point, and for those reasons, I am uncomfortable

5    describing conversations at this point because the descriptions may not be accurate. However, I vaguely

6    recall a conversation between Keith Shaw and Sandy Lassiter at Lassiter's home in Dove Canyon,

7    California. Since the Lassiters and my family were family friends at the time, they had been casually

8    talking about my enrollment in nursing school. It was around this time in 2006 that Shaw had suggested

9    to Sandy Lassiter that I work as a caregiver for Onsite. These were oral conversations.

10        Sandy Lassiter was well aware of who I was in relation to Shaw as they collectively would have

11    conversations in their home about my potential employment with Onsite as a caregiver. However, I was

12    never asked to fill out an application or W9 by anyone from Onsite. Therefore, Shaw is the one

13    concealed/lied about me because the Lassiters did know me as Mickey/Mikhail.

14        I also recall that Dennis Lassiter, who was not a member of Onsite at the time, was well aware of

15    the conversation with Sandy and Shaw because he was present, once specifically during a party where he,

16    a friend of his, and I were playing guitar together in his living room.

17        Neither Lassiter nor Shaw asked me to fill out an application form of any kind at this time and to

18    my recollection, I was not assigned any patients at that time.

19        I was assigned caregiving patients from Shaw. Sandy Lassiter did not call my client about

20    assignments -- which she confirms in her original complaint when she mentions that Shaw managed the

21    contractors and caregivers. Therefore, Shaw was able to conceal his schemes from me and Lassiter

22    because he was the point of communication. He could have forged an application form, and lied about my

23    legal name.

24        I do not cannot recall the exact dates of these conversations, however, my point of reference was

25    that I was in nursing school which was in 2006.

26        Regarding Defendant not recalling the exact dates of conversations, his duties as caregivers,

27    Plaintiff demanded that I confirm that the documents I produced were the only conversations I had with

28

JOINT STIPULATION ON MOTION TO COMPEL FURTHER RESPONSES TO FIRST SET OF INTERROGATORIES

1  Keith Shaw or oral communications, and does not know the exact amount of income that he earned in

2  2006 and 2007.

3          I responded that the conversations with Raymond Babylonia, Shaw & Lassiter, were over 15

4  years ago, and I do not recall the exact substance or dates of the conversations, but it would be regarding

5  their duties as caregivers for Onsite. I identified and produced the following emails and texts with Shaw

6  and no others: [ALFON0008J; [ALFON0223-0224]; [ALFON0226-0227]; [ALFON0228];

7  [ALFON0229-0230]; [ALFON0231]; [ALFON0235-0239] DECLARATION OF RAYMOND

8  BABILONIA, [ALFON312 -313].

9  PLAINTIFF'S CONTENTIONS RE NECESSITY OF FURTHER RESPONSE TO SPECIAL
   INTERROGATORY NO. 11:

10

11         Defendant has failed to provide a response in compliance with Fed. R. Civ. P. 33.

12         First, Defendant confirmed in several letters that he would withdraw his objections based on Local

13  Bankruptcy Rule 7026-3(b). *See* Declaration of Rick Augustini, Exh. 16: "In the interests of resolving

14  this discovery dispute, my client will supplement his response and remove the LBR 7026-3(b)

15  Objections."

16         Second, Defendant's response is evasive and incomplete.

17         The fact that he does not recall the exact dates of conversations does not relieve him of the

18  obligation to disclose every communication he had with anyone at Onsite regarding any aspect of his work

19  to the best of his ability. *See, e.g.,* Gorrell v. Sneath, 292 F.R.D. 629, 632 (holding a party responding to

20  interrogatories must respond to the fullest extent possible).

21         Instead of doing so, Defendant instead has stated that he had communications with Sandy

22  Lassiter, Keith Shaw and Raymond Babylonia, but cannot recall the substance of those communications.

23  Surprisingly, however, despite his lack of recollection of what was discussed, Defendant seems able to

24  clearly recall what the parties did <u>not</u> speak about. It therefore seems clear that Defendant's responses are

25  not full and complete.

26         Third, Defendant's response does not make clear that he has disclosed <u>everything</u> he recalls about

27  the relevant communications, relying instead on his contention that he is "uncomfortable" describing the

28  communications because they occurred long ago. This is nothing more than an excuse.

1    If Defendant cannot describe the particulars of every communication, he is required to provide his

2    best recollection, and to confirm that his response is full and complete.

3    Fourth, much of Defendant's response consists of argument and irrelevant matter that is

4    completely nonresponsive, as is typical of his tactics in this action, i.e., to overwhelm Plaintiff with pages

5    and pages of materials, the vast majority of which have nothing to do with the questions asked.

6    These concerns have been raised with Defendant's counsel in both an oral meet and confer

7    discussion and in correspondence, to no avail.

8    Defendant should therefore be ordered to provide a full, complete, straightforward and <u>responsive</u>

9    response to this interrogatory.

10   DEFENDANT'S CONTENTIONS RE SUFFICIENCY OF RESPONSE TO SPECIAL
     INTERROGATORY NO. 11:

11

12   First, as reflected above in Defendant's Supplemental Response to Plaintiff's Special

13   Interrogatory No. 11, he provided a lengthy response and detailed information to the interrogatory. The

14   matter of whether Defendant should withdraw his objections is moot since he has answered the

15   interrogatory, however, should this Court order Defendant to do so, he will withdraw only the objections

16   that do not apply.

17   Second, in no way is Defendant's response evasive or incomplete. As he stated, the events at

18   issue took place 15 years ago. He clearly recalled the persons with whom he spoke and the nature of the

19   communications with them. Obviously, he can't remember the dates of these conversations. The

20   conversations he had were with people connected to Onsite in relation to caregiving assignments.

21   Defendant would refer this Court to his above response, in which he recalls the names of people with

22   whom he had conversations (Sandy Lassiter, Keith Shaw and Raymond Babylonia), the fact that they

23   were discussing caregiving, and even in one case, that he was playing the guitar at the time at Dennis

24   Lassiter's house. It is unfathomable to think that anyone would remember anything more specific than

25   that after a decade and a half. Again, this is Defendant's best and most thorough response. If Plaintiff

26   believes he is "hiding" something or being evasive, then Plaintiff should depose him.

27   Third, Plaintiff accuses the Defendant of making excuses when he stated that he was

28   "uncomfortable" describing communications because they occurred long ago. If Plaintiff's counsel were

JOINT STIPULATION ON MOTION TO COMPEL FURTHER RESPONSES TO FIRST SET OF INTERROGATORIES

1    deposing the Defendant, he would admonish him not to guess when answering a question. But here, that's

2    exactly what he's asking for. So, it should come as no surprise that Mr. Alfon doesn't want to guess at

3    what he or others might or might not have said in a conversation. In 2006, Mr. Alfon was 19 years old.

4    These weren't significant discussions for him at the time. What was memorable for him as a teenager,

5    was playing the guitar with friends at a party. Plaintiff **has** provided his best recollection, and this has been

6    confirmed by his counsel multiple times in meet-and-confer emails.

7    Fourth, Plaintiff claims "much of Defendant's response consists of argument and irrelevant matter

8    that is completely nonresponsive, as is typical of his tactics in this action, i.e., to overwhelm Plaintiff with

9    pages and pages of materials, the vast majority of which have nothing to do with the questions asked."

10   This is absolutely untrue. All this Court has to do is read Defendant's response as quoted above. This

11   alone should demonstrate to the Court that he fully responded in a clear fashion to the best of his ability.

12   Plaintiff fails to state in what manner Defendant's response is allegedly not in compliance with

13   *FRCP* 33.

14   Defendant stipulates that he has withdrawn his objections pursuant to *LBR* 7026-3(b).

15   The remainder of Plaintiff's contentions are of the "form-over-substance" variety, essentially

16   creating a dispute where Defendant has already substantively responded in full. Defendant responded at

17   great length and in the degree of detail to which he was capable, giving his best recollection of whatever

18   communications he could recall, and stating what he could not recall or recount accurately, and explaining

19   that the oral conversations in question took place almost 15 years ago. That Plaintiff was hoping for

20   something more does not change that Defendant's response is in fact responsive.

21   Moreover, Plaintiff is "shifting the goalposts," now demanding "<u>everything</u> [Defendant] recalls

22   about the relevant communications," where the original interrogatory only asks to "[d]escribe each

23   communication."

24   SPECIAL INTERROGATORY NO. 12:

25   Describe each communication between YOU and Keith Shaw regarding any aspect of YOUR

26   work for Onsite Nurse Concierge, LLC, including the date, mode (e.g., oral or written) and substance of

27   the communication.

28

1    SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 12:

2          Objection: Pursuant to LBR 7026-3(b), A party must not, without leave of the court and for good

3    cause shown, serve more than 25 interrogatories on any other party. Each subdivision of an interrogatory

4    is considered a separate interrogatory. A motion for leave to serve additional interrogatories may be made

5    pursuant to LBR 9013-1 (d) or (o). This special interrogatory exceeds the 25 interrogatory limit of LBR

6    7026-3(b).

7          Objection: Pursuant to FRCP 33a (1), unless otherwise stipulated or ordered by the court, a party

8    may serve on any other party no more than 25 written interrogatories, ***including all discrete subparts.***

9    Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and

10    (2). [Emphasis added]. This special interrogatory exceeds the 25 interrogatory limit of FRCP 33a(l).

11          Notwithstanding the above objections, Responding Party responds as follows:  These

12    conversations are over 15 years old, and Defendant does not recall the exact substance or dates of the

13    conversations but it would be regarding Defendant's duties as caregivers for Onsite.

14    SECOND REVISED SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 12:

15          Regarding Defendant's conversations with SHAW.

16          I cannot recall the exact date, time, or mode of communication regarding my work for Onsite, as

17    they had taken place almost 15 years ago at this point, and for those reasons, I am uncomfortable

18    describing conversations at this point because the descriptions may not be accurate.

19          I vaguely recall conversations with SHAW stating that Sandy Lassiter had agreed to allow me to

20    work as a caregiver for Onsite.  I also vaguely recall conversations regarding my assignment which was

21    the Meikeljohns, the condition of the client as well as the address, time, and directions to the client's

22    residence.

23          Additionally, SHAW inquired about other nursing students or friends that may want to work as

24    caregivers.  It was at this time I identified Raymond Babylonia, David Karstens, who at one point shared

25    shifts with me at the Meikeljohns.

26          These were oral conversations that may have taken place in either Ladera Ranch or Mission Viejo

27    California, or in Costa Mesa California at Pacific College (my nursing school) as SHAW would

28    occasionally visit me client during his lunch break.

JOINT STIPULATION ON MOTION TO COMPEL FURTHER RESPONSES TO FIRST SET OF INTERROGATORIES

PLAINTIFF'S CONTENTIONS RE NECESSITY OF FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 12:

See discussion re Special Interrogatory No. 11.

In addition, Onsite's Judgment is based on a fraudulent scheme perpetrated by Shaw and Defendant, pursuant to which Onsite was billed for over 2,000 hours of work that Onsite was told was performed by Defendant and Shaw, but was actually never performed.  Defendant does not dispute that he worked for Onsite for at least some period of time, that he was paid for that time, and that he cashed and/or deposited checks from Onsite.

He nevertheless claims that other checks issued to him by Onsite were deposited in his account – and monies withdrawn from his account - by Shaw without his knowledge.  Plaintiff is clearly entitled to determine whether any communications occurred between Shaw and Defendant regarding these monies.

In fact, in his response to Interrogatory No. 13 below, Defendant refers to loss of his nursing license "due to Shaw's schemes," and a police raid of his apartment in 2008 that he believed was due to Shaw.  It begs reason to believe that Defendant never had any conversations with Shaw regarding his work at Onsite, and whether this was somehow related to Shaw's fraud and/or loss of Defendant's nursing license, or that Defendant never made any inquiry of the police to determine the nature and extent of their investigation and the reason for their raid.

Defendant also fails to include descriptions of any of his discussions with Shaw that took place after he was served with the Notice of Renewal of Judgment in January 2021.

Defendant must therefore provide a response that clearly states that all responsive communications have been disclosed, and that all information regarding those communications that Defendant can reasonably recall has been provided.

DEFENDANT'S CONTENTIONS RE SUFFICIENCY OF RESPONSE TO SPECIAL INTERROGATORY NO. 12:

Plaintiff fails to state in what manner Defendant's response is allegedly not in compliance with *FRCP* 33.

Defendant stipulates that he has withdrawn his objections pursuant to *LBR* 7026-3(b).

JOINT STIPULATION ON MOTION TO COMPEL FURTHER RESPONSES TO FIRST SET OF INTERROGATORIES

1    Here, Plaintiff simply rejects Defendant's complete and responsive response because it fails to

2    conform to Plaintiff's theory of the case. Defendant contends that interrogatories are not the place to

3    litigate theories of the case, but rather only to obtain the responses of the other party.

4    Defendant does not dispute that Plaintiff is entitled to seek to determine whether any

5    communications occurred between Shaw and Defendant regarding certain monies. However, Defendant

6    has given his response. Plaintiff is free to inquire further at deposition or at trial.

7    Moreover, Plaintiff is "shifting the goalposts," by now demanding "everything he recalls about the

8    relevant communications," where the original interrogatory only asks to "[d]escribe each

9    communication." However, Defendant responded that he could not accurately "recall the exact date, time,

10    or mode of communication regarding [his] work for Onsite, as they had taken place almost 15 years ago."

11    Defendant stated that he was "uncomfortable describing conversations ...because the descriptions may

12    not be accurate." There is nothing wrong with a statement like this, and indeed, if asked at deposition, Mr.

13    Alfon would be admonished by Plaintiff's counsel not to guess as to any answers. In fact, Defendant

14    made his best effort, and stated that he "vaguely recall[ed] conversations with [his father] stating that

15    Sandy Lassiter had agreed to allow [him] to work as a caregiver for Onsite." He also stated that he

16    "vaguely recall[ed] conversations regarding [his] assignment [with] the Meikeljohns, the condition of the

17    client as well as the address, time, and directions to the client's residence."

18    The Defendant also stated that he recalled conversation(s) with his father "about other nursing

19    students or friends that [might] want to work as caregivers," and identified Raymond Babylonia and David

20    Karstens, who at one point shared shifts with him at the Meikeljohns.

21    He further responded that these were "oral conversations that may have taken place in either

22    Ladera Ranch or Mission Viejo California, or in Costa Mesa California at Pacific College ([his] nursing

23    school) as [his father] would occasionally visit [his] client during [Defendant's] lunch break."

24    It is unclear what else Plaintiff requires from Defendant in responding to this interrogatory, as

25    Defendant has obviously responded as best he can in light of the years that have passed since these

26    conversation occurred.

27

28

JOINT STIPULATION ON MOTION TO COMPEL FURTHER RESPONSES TO FIRST SET OF INTERROGATORIES

1    SPECIAL INTERROGATORY NO. 13:

2        Describe each communication between YOU and anyone other than YOUR attorneys regarding

3    any aspect of the STATE COURT ACTION.[4]

4    SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 13:

5        Objection:  Pursuant to LBR 7026-3(b), A party must not, without leave of the court and for good

6    cause shown, serve more than 25 interrogatories on any other party. Each subdivision of an interrogatory

7    is considered a separate interrogatory. A motion for leave to serve additional interrogatories may be made

8    pursuant to LBR 9013-1 (d) or (o). This special interrogatory exceeds the 25 interrogatory limit of LBR

9    7026-3(b).

10        Objection: Pursuant to FRCP 33a(1), unless otherwise stipulated or ordered by the court, a party

11    may serve on any other party no more than 25 written  interrogatories, ***including all discrete subparts.***

12    Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and

13    (2). [Emphasis added]. This special interrogatory exceeds the 25 interrogatory limit of FRCP 33a(l).

14        Notwithstanding the above objections, Responding Party responds as follows: (1) January 2021:

15    Alexa Benevides, Defendant's wife, communicating how frustrating this situation is because someone is

16    attempting to hold Defendant responsible for Shaw's crimes; (2) January 2021:  Devang Shaw:

17    communicating how frustrating this situation is because someone is attempting to hold Defendant

18    responsible for Shaw's crimes, also asking for an attorney reference.

19    SECOND REVISED SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 13:

20        Regarding my conversations regarding the State Court Action, without limitation to the Judgment:

21        I recall that in January 2021, I had WhatsApp conversations with SHAW asking him about the

22    details of how he committed fraud against me, my family, and what he knew about this case since he had

23    concealed it from me and avoided any conversation regarding his imprisonment and criminal activities in

24    the past.  I provided Plaintiff with the transcript ALFON0235-0239 -- SHAW-ALFON TEXTS.

25

26    _____

27    [4] The "STATE COURT ACTION" is defined in the interrogatories to mean, "Onsite Nurse Concierge,
LLC v. Shaw, et al., Orange County Superior Court Case No. 07CC10089, including without limitation
28    the judgment entered against YOU."

JOINT STIPULATION ON MOTION TO COMPEL FURTHER RESPONSES TO FIRST SET OF INTERROGATORIES

1    In the conversations, I told Shaw about the actions that Onsite was taking against me for his

2  wrongdoing not mine, and asked him to finally admit that he defrauded me. This was also shown in the

3  text messages that I provided, requesting his help to finally admit that he had committed fraud against me.

4    I also had conversations with Shaw via phone to let him know to scan the documents in color and

5  get them notarized. This has been documented in this case already.

6    Additionally, since January 2021, I had conversations with my wife about how frustrating this

7  circumstance is. These conversations have been oral.

8    Additionally, I was interviewed in several podcasts where I discussed Shaw's fraud against me

9  and the criminal actions against me:

10    1.    Why People Make All the Difference in the World with Mikhail Alfon, https://ryan james mi

11        11 er .com/why-people-make-all-the-difference-in-the-world-with-mikhail-alfon/ - At the

12        time of this interview, I was under the impression that I had lost my nursing license because of

13        Shaw's identity theft.

14    2.    6-12-2020, The Social Sunshine Podcast, Hustle & Flo with Mikhail Alfon,

15        https://open.spotify.com/cpisodc/6mpBoZqdoCTlpbFuqARiRi, At the time of this interview,

16        I was under the impression that I lost my nursing license because of SHAWs schemes, not

17        because of a complaint filed by Sandy Lassiter of Onsite - which I literally found out about

18        today.

19    3.    1-28-2021, https://student-of-intention.simplecast.com/episodes/episode-3-mikhail-alfon-

20        RXOadAAF, This interview was done after I was served with the renewal judgement January

21        2021 and spoke with Shaw about what actually happened. Prior to this, I had no clue of this

22        civil case and through the police raiding my apartment in 2008 had to do with Shaw

23        committing identity theft.

24  <u>PLAINTIFF'S CONTENTIONS RE NECESSITY OF FURTHER RESPONSE TO SPECIAL
    INTERROGATORY NO. 13</u>:

25
    See discussion re Request for Further Response to Special Interrogatory Nos. 11 and 13.

26
    It is simply not credible that Defendant claims to believe he lost his nursing license "due to
27
  Shaw's schemes," and that the police raided his apartment in 2008 based on what he believed was conduct
28

1    by Shaw, and that he never discussed these matters with Shaw, even though these events occurred during

2    the very same time frame when the State Court Action was pending.

3            Defendant also references conversations with Devang Shaw in his "Supplemental" response, but

4    does not provide any information about these discussions in his "Second Revised Supplemental

5    Response."

6            Because Defendant provides additional information in each iteration of his responses, it is

7    impossible to determine if his responses are full and complete, and whether all responsive information has

8    been provided.

9            These concerns have been raised with Defendant's counsel in both an oral meet and confer

10    discussion and in correspondence, to no avail.

11            Defendant must therefore provide a response that clearly states that <u>all</u> responsive

12    communications have been disclosed, and that all information regarding those communications that

13    Defendant can reasonably recall has been provided.

14    <u>DEFENDANT'S CONTENTIONS RE SUFFICIENCY OF RESPONSE TO SPECIAL
      INTERROGATORY NO. 13</u>:

15

16            Plaintiff fails to state in what manner Defendant's response is allegedly not in compliance with

17    *FRCP* 33.

18            Defendant stipulates that he has withdrawn his objections pursuant to *LBR* 7026-3(b).

19            Plaintiff raises issues here that are not properly the subject of a motion to compel. Plaintiff's

20    beliefs concerning the credibility of Defendant's response have no bearing on the sufficiency of that

21    response. Nor does it make any sense for Plaintiff to complain that his meet-and-confer demands elicited

22    expanded responses. Here, as regarding all other interrogatory responses, Plaintiff is free to examine

23    Defendant further at deposition or trial, but not to essentially demand responses consistent with its own

24    theories and litigation strategies and to refuse to accept Defendant's responses until they so conform.

25            Finally, because each Supplemental Response provided by Defendant is Supplemental, they do

26    not repeat information already stated in prior responses.

27            Defendant provided an extremely detailed response, and supplemented it in reply to Plaintiff's

28    meet-and-confer discussions.  These are all of his responses:

1    "(1) January 2021:  Alexa Benevides, Defendant's wife, communicating how frustrating this

2    situation is because someone is attempting to hold Defendant responsible for Shaw's crimes; (2) January

3    2021:  Devang Shaw: communicating how frustrating this situation is because someone is attempting to

4    hold Defendant responsible for Shaw's crimes, also asking for an attorney reference."

5    "Regarding my conversations regarding the State Court Action, without limitation to the

6    Judgment:

7    I recall that in January 2021, I had WhatsApp conversations with SHAW asking him about the

8    details of how he committed fraud against me, my family, and what he knew about this case since he had

9    concealed it from me and avoided any conversation regarding his imprisonment and criminal activities in

10    the past.  I provided Plaintiff with the transcript ALFON0235-0239 – SHAW-ALFON TEXTS.

11    In the conversations, I told Shaw about the actions that Onsite was taking against me for his

12    wrongdoing not mine, and asked him to finally admit that he defrauded me.  This was also shown in the

13    text messages that I provided, requesting his help to finally admit that he had committed fraud against me.

14    I also had conversations with Shaw via phone to let him know to scan the documents in color and

15    get them notarized. This has been documented in this case already.

16    Additionally, since January 2021, I had conversations with my wife about how frustrating this

17    circumstance is. These conversations have been oral.

18    Additionally, I was interviewed in several podcasts where I discussed Shaw's fraud against me

19    and the criminal actions against me:

20    1.    Why People Make All the Difference in the World with Mikhail Alfon, https ://ryan j

21    amesmi 11 er .com/why-people-make-all-the-difference-in-the-world-with-mikhail-alfon/ - At the time of

22    this interview, I was under the impression that I had lost my nursing license because of Shaw's identity

23    theft.

24    2.    6-12-2020, The Social Sunshine Podcast, Hustle & Flo with Mikhail Alfon,

25    https://open.spotify.com/cpisodc/6mpBoZqdoCTlpbFuqARiRi, At the time of this interview, I was under

26    the impression that I lost my nursing license because of SHAWs schemes, not because of a complaint filed

27    by Sandy Lassiter of Onsite - which I literally found out about today.

28

JOINT STIPULATION ON MOTION TO COMPEL FURTHER RESPONSES TO FIRST SET OF INTERROGATORIES

1        3.    1-28-2021, https://student-of-intention.simplecast.com/episodes/episode-3-mikhail-alfon-

2    RXOadAAF, This interview was done after I was served with the renewal judgement January 2021 and

3    spoke with Shaw about what actually happened. Prior to this, I had no clue of this civil case and through

4    the police raiding my apartment in 2008 had to do with Shaw committing identity theft."

5            The dispute over this response is absolutely unreasonable.  Defendant provided a perfectly

6    complete answer, but Plaintiff's counsel seems never to be satisfied with any of his responses, and

7    apparently thinks by asking it over and over again, he'll find a smoking gun.  This is not going to happen,

8    and Defendant has responded to the best of his ability.

9    SPECIAL INTERROGATORY NO. 14:

10           Describe each communication between YOU and anyone other than YOUR attorneys regarding

11   any aspect of this Adversary Proceeding, including the date, mode (e.g., oral or written) and substance of

12   the communication.

13   SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 14:

14           Objection:  Pursuant to LBR 7026-3(b), A party must not, without leave of the court and for good

15   cause shown, serve more than 25 interrogatories on any other party. Each subdivision of an interrogatory

16   is considered a separate interrogatory. A motion for leave to serve additional interrogatories may be made

17   pursuant to LBR 9013-1 (d) or (o). This special interrogatory exceeds the 25 interrogatory limit of LBR

18   7026-3(b).

19           Objection: Pursuant to FRCP 33a(1), unless otherwise stipulated or ordered by the court, a party

20   may serve on any other party no more than 25 written  interrogatories, ***including all discrete subparts.***

21   Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and

22   (2). [Emphasis added]. This special interrogatory exceeds the 25 interrogatory limit of FRCP 33a(l).

23           Notwithstanding the above objections, Responding Party responds as follows:  throughout 2021

24   via WhatsApp to Keith Shaw, asking him to admit that he committed fraud against Defendant and Onsite.

25   These documents were produced to Plaintiff on 2-11-2022:  Declaration of Keith Shaw, Batestamped

26   [ALFON0001 – ALFON0007]; Emails and texts with Shaw:  (1) [ALFON0008]; [ALFON0223-0224]

27   [ALFON0226-0227], [ALFON0228]; [ALFON0229-0230]; [ALFON0231]; [ALFON0235-0239].

28

JOINT STIPULATION ON MOTION TO COMPEL FURTHER RESPONSES TO FIRST SET OF INTERROGATORIES

1    SECOND REVISED SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 14:

2        Periodically, throughout 2021 with my wife Alexa orally, expressed frustration over this

3    circumstance. Plaintiff claims that I failed to address deficiencies in this response. I disagreed.

4        Responses to these were provided in my lawyer's letter of 3-14-22 entitled "Further Response to

5    Meet and Confer re: Defendant's (1) Defendant's First Revised Supplemental Response to Plaintiff's

6    Interrogatories, Set One; & (2) Defendant's First Revised Supplemental Response to Plaintiff's Request

7    for Production of Documents to Defendant, Set One." Plaintiff has not read what my lawyer wrote and is

8    churning false claims that no response was given.

9    PLAINTIFF'S CONTENTIONS RE NECESSITY OF FURTHER RESPONSE TO SPECIAL
     INTERROGATORY NO. 14:

10

11        See discussion re Request for Further Responses to Interrogatory Nos. 11 and 13.

12        In addition, while Defendant refers to his counsel's letter of March 14, 2022, no information in

13    response to Special Interrogatory 14 is mentioned in that letter and, in fact, no mention is made of this

14    interrogatory at all. In any event, counsel's statements are not a substitute for a <u>verified supplemental</u>

15    <u>response</u> containing the requested information.

16        These concerns have been raised with Defendant's counsel in both an oral meet and confer

17    discussion and in correspondence, to no avail.

18    DEFENDANT'S CONTENTIONS RE SUFFICIENCY OF RESPONSE TO SPECIAL
     INTERROGATORY NO. 14:

19        Plaintiff fails to state in what manner Defendant's response is allegedly not in compliance with

20    *FRCP* 33.

21        Defendant stipulates that he has withdrawn his objections pursuant to *LBR* 7026-3(b).

22        Moreover, Defendant did respond, stating that Defendant responded that the conversations with

23    Raymond Babylonia, Shaw & Lassiter, were over 15 years ago, and Defendant does not recall the exact

24    substance or dates of the conversations, but they would have been regarding their duties as caregivers for

25    Onsite. He also identified written/electronic communications with Shaw as responsive, and more recent

26    conversations with his wife:

27

28

JOINT STIPULATION ON MOTION TO COMPEL FURTHER RESPONSES TO FIRST SET OF INTERROGATORIES

1   "Responding Party responds as follows: throughout 2021 via WhatsApp to Keith Shaw, asking

2   him to admit that he committed fraud against Defendant and Onsite. These documents were produced to

3   Plaintiff on 2-11-2022: Declaration of Keith Shaw, Batestamped [ALFON0001 – ALFON0007]; Emails

4   and texts with Shaw: (1) [ALFON0008]; [ALFON0223-0224] [ALFON0226-0227], [ALFON0228];

5   [ALFON0229-0230]; [ALFON0231]; [ALFON0235-0239]."

6   "Periodically, throughout 2021 with my wife Alexa orally, expressed frustration over this

7   circumstance. Plaintiff claims that I failed to address deficiencies in this response. I disagreed.

8   Responses to these were provided in my lawyer's letter of 3-14-22 entitled 'Further Response to

9   Meet and Confer re: Defendant's (1) Defendant's First Revised Supplemental Response to Plaintiff's

10  Interrogatories, Set One; & (2) Defendant's First Revised Supplemental Response to Plaintiff's Request

11  for Production of Documents to Defendant, Set One.'"

12  Although Defendant's Second Supplemental Response refers to attorney communications, these

13  are not necessary to establish that Defendant's cumulative response is responsive and complete, to the best

14  of his ability.

15  SPECIAL INTERROGATORY NO. 18:

16  Describe each CREDIT ACCOUNT maintained in YOUR name (individually or jointly) at any

17  time between January 1, 2019 and June 30, 2021, including the name of the bank and the account number.

18  SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 18:

19  Objection: Pursuant to LBR 7026-3(b), A party must not, without leave of the court and for good

20  cause shown, serve more than 25 interrogatories on any other party. Each subdivision of an interrogatory

21  is considered a separate interrogatory. A motion for leave to serve additional interrogatories may be made

22  pursuant to LBR 9013-1 (d) or (o). This special interrogatory exceeds the 25 interrogatory limit of LBR

23  7026-3(b).

24  Objection: Pursuant to FRCP 33a (1), unless otherwise stipulated or ordered by the court, a party

25  may serve on any other party no more than 25 written interrogatories, ***including all discrete subparts.***

26  Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and

27  (2). [Emphasis added]. This special interrogatory exceeds the 25 interrogatory limit of FRCP 33a(l).

28

1       Notwithstanding the above objections, Responding Party responds as follows:  Defendant's only

2  recollection of a credit account of his between January 1, 2019 and June 30, 2021 is a Credit One credit

3  card #4447 9624 1459 0806, and a Capital One credit card.  Defendant is unable to provide the Capital

4  One account number as he no longer has said statements and was told by Capital One that it does not keep

5  credit card statements after 10 years.  Defendant was told by Capital One that it cannot produce the credit

6  card statements to Defendant since Capital One was listed on Defendant's bankruptcy Schedule F to be

7  discharged.

8  <u>SECOND REVISED SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 18</u>:

9       In the interests of resolving this discovery dispute, I supplement my response to reflect the

10  following:

11       Best Buy / HSBC  HSBC Card Services, P.O. Box 49352, San Jose, CA  95161-9352 – Account

12  Number:  unknown at this time.

13       Attempted to call their card services center, 1-888-574-1301, system shows no account on File

14  because HSBC no longer finances the cards.  Capital One bought the portfolio who later sold it to

15  CitiGroup:  https://www.washingtonpost.com/business/economy/capital-one-sells-best-buy-credit-card-

16  portfolio-to-citigroup/2013/02/19/9b4ba18a-7ab6-aa32-a044-676856536b40_story.html

17       Credit One Account Credit Card Account:  4447 9624 1459 0806

18       Capital One Credit Card:  5178 0578 4636 7066

19  <u>PLAINTIFF'S CONTENTIONS RE NECESSITY OF FURTHER RESPONSE TO SPECIAL
INTERROGATORY NO. 18</u>:

20

21       See discussion re Special Interrogatory No. 11.

22       In addition, Defendant's response, as with most of his responses, is woefully confusing.  This

23  request asks for information regarding credit accounts maintained between January 1, 2019 and June 30,

24  2021.  Rather than simply providing this information, Defendant has included (1) objections he has

25  repeatedly agreed to withdraw; and (2) a discussion about why he cannot produce documents regarding

26  accounts maintained in the last <u>two years</u> because records are not maintained for more than <u>ten years</u>.  This

27  makes absolutely no sense.

28

1    Further, while he claims in his initial response to have had only two credit accounts since January

2    1, 2019, he includes a Best Buy account in his supplemental response, but fails to provide the account

3    number.

4    These concerns have been raised with Defendant's counsel in both an oral meet and confer

5    discussion and in correspondence, to no avail.

6    Plaintiff is entitled to a full and complete response, devoid of objections, after a diligent search and

7    reasonable inquiry.

8    DEFENDANT'S CONTENTIONS RE SUFFICIENCY OF RESPONSE TO SPECIAL
      INTERROGATORY NO. 18:
9

10   Plaintiff fails to state in what manner Defendant's response is allegedly not in compliance with

11   FRCP 33.

12   Defendant stipulates that he has withdrawn his objections pursuant to LBR 7026-3(b).

13   Defendant's response provided the explanation he received from Capital One regarding why the

14   account information could not be shared with him. Defendant does not vouch for this explanation or claim

15   that it is logical, nor is he required to do so. As always, Plaintiff is free to pursue this question upon

16   examination of the Defendant at deposition or trial, but this has no bearing on the sufficiency of the

17   response.

18   Moreover, Defendant subsequently obtained the account number and disclosed it in his Second

19   Supplemental Response, rendering Plaintiff's contention moot.

20   **Plaintiff's Conclusion**

21   Plaintiff has made every effort to obtain full, complete, responsive responses to its interrogatories.

22   In return, Defendant continues to play games.  Despite having had over close to a *year* to comply with his

23   discovery obligations, and having been sanctioned $25,000.00 in connection with Plaintiff's Motion to

24   Compel Further Responses to its First Request for Production of Documents, Defendant continues to

25   assert a prefatory statement/disclaimers and objections he has repeatedly agreed to withdraw, and he

26   continues to refuse to provide complete, straightforward responses to many of Plaintiff's special

27   interrogatories.

28

1    The Court should therefore grant Plaintiff's Motion in its entirety, order Defendant to provide

2    supplemental responses as set forth above and in Plaintiff's moving papers, and sanction Plaintiff and his

3    attorney in the amount of $_____.

4                                          **Defendant's Conclusion**

5    Defendant has responded in good faith to Plaintiff's interrogatories, has met and conferred several

6    times, and has supplemented them, in an effort to resolve this never-ending discovery dispute driven

7    primarily by the elevation of form over substance. Defendant has been reasonable in the face of Plaintiff's

8    often unreasonable meet-and-confer demands.

9    Defendant is unaware of any true remaining substantive issues, but to the extent there are, they can

10   be easily clarified at Defendant's deposition, and do not justify the granting of any motion to compel.

11   Defendant's compliance with deadlines and timetables was affected by counsel's previous health

12   issues, especially of late, as kindly acknowledged by Plaintiff. However, the greatest impediment to more

13   timely compliance was the never-ending flood of largely unreasonable meet and confer demands and

14   rejections by Plaintiff, elevating form over substance in order to render a discovery process contentious

15   and protracted. Defendant therefore contends that any sanction would be inappropriate.

16   Quite simply, Defendant has made every effort to provide full, complete, responsive responses to

17   Plaintiff's interrogatories. Defendant has not played any "games." Defense counsel has made good faith

18   attempts to obtain all the information in his client's memory and possession. It is common sense that after

19   15 years, things disappear and memories fade. The issue of the "prefatory statement" is just a distraction,

20   because the evidence shows that Defendant has provided adequate responses to Plaintiff's discovery.

21   Defense counsel has offered his client for deposition, so that the Plaintiff may directly ask Mr. Alfon any

22   other questions they may have at this point.

23   Accordingly, Defendant respectfully requests that this Court deny Plaintiff's Motion to Compel in

24   its entirety, and deny Plaintiff's Request for Sanctions.

25

26

27

28

JOINT STIPULATION ON MOTION TO COMPEL FURTHER RESPONSES TO FIRST SET OF INTERROGATORIES

1

2
    DATED:  December 6, 2022               LAW OFFICE OF RICK AUGUSTINI

3
                                          By:  /s/  Rick Augustini

4
                                            Rick Augustini
                                            Counsel for Plaintiff

5
                                            ONSITE NURSE CONCIERGE, LLC

6
    DATED:  December 19, 2022           LAW OFFICE OF BARUCH COHEN

7

8
                                          By:
                                          Baruch Cohen

9
                                          Attorney for Defendant
                                        ERNEST MIKHAIL ALFON

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STIPULATION ON MOTION TO COMPEL FURTHER RESPONSES TO FIRST SET OF INTERROGATORIES

**EXHIBIT "2"**



BARUCH COHEN <baruchcohen@baruchcohenesq.com>

---

## ALFON - HEARING ON MOTION TO COMPEL FURTHER RESPONSES TO FIRST SET OF SPECIAL INTERROGATORIES PROPOUNDED TO DEFENDANT

**Baruch Cohen** <baruchcohen@baruchcohenesq.com>                    Fri, Dec 23, 2022 at 12:14 PM
Reply-To: baruchcohen@baruchcohenesq.com
To: Rick Augustini <rick.augustini@gmail.com>, Tracy Anielski <tanielski@att.net>, BARUCH COHEN
<baruchcohen@baruchcohenesq.com>
Bcc: Mikhail Alfon <mikhail@bluelight.media>

Counsel:

You unilaterally set the hearing on the MOTION TO COMPEL FURTHER RESPONSES TO FIRST SET OF SPECIAL
INTERROGATORIES PROPOUNDED TO DEFENDANT for 1-18-2023 at 11:00am without consulting with me first.
Your JOINT STIPULATION that you had me sign was blank as to the date and I never agreed to a 1-18-2023 hearing date
(on the stipulation you wrote the wrong time as 10:30am). You improperly added that 1-18-2023 date without conferring
with me to see if I am available.

I have a trial on 1-18-2023 starting at 10:00am before Judge Yun in Riverside Bankruptcy Court that day. Accordingly, I
am unavailable to appear on that date before Judge Clarkson.

Either we stipulate to continue the hearing - possibly to Friday 1-20-2023 - my hesitation and reservation with that
continued date is that the trial before Judge Yun could theoretically carry over until Friday, or we stipulate to continue the
1-18-2023 hearing and the 1-30-2023 discovery cutoff date.

If we cannot agree to either, I will be forced to apply ex parte to move the 1-18-2023 hearing date informing the court of
the above. Please advise today.

BCC

---
Baruch C. Cohen, Esq.
Law Office of Baruch C. Cohen, APLC
4929 Wilshire Boulevard, Suite 940
Los Angeles, CA 90010
Office (323) 937-4501 | Cell (323) 353-9535
Facsimile: (888) 316-6107
Email: baruchcohen@baruchcohenesq.com, bcc4929@gmail.com
Linkedin: https://www.linkedin.com/in/baruchcohen/
Facebook: https://www.facebook.com/baruch.cohen.37/
*Selected To Super Lawyers: 2013, 2015 - 2021, 2022*

This e-mail is covered by the Electronic Communications Privacy Act 18 U.S.C. 2510-2521 and is legally privileged. It is intended only for the use of the
individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you
are not the intended recipient, any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in
error, please notify us immediately by e-mail and destroy this communication.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010.

A true and correct copy of the foregoing document entitled: **DEFENDANT'S EX PARTE MOTION CONTINUING 1-18-2023 HEARING ON PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO FIRST SET OF SPECIAL INTERROGATORIES PROPOUNDED TO DEFENDANT; DECLARATION OF BARUCH C. COHEN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 12/27/2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Rick Augustini (PL)           rick.augustini@gmail.com
Thomas H Casey (TR)           msilva@tomcaseylaw.com, thc@trustesolutions.net
United States Trustee (SA)     ustpregion16.sa.ecf@usdoj.gov

☐    Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:  On 12/27/2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 12/27/2022, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Scott Clarkson, 411 West Fourth Street, Suite 5130, Santa Ana, CA 92701-4593

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/27/2022 | Baruch C. Cohen, Esq. | /s/ Baruch C. Cohen |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Page 1